Curia, per

Richardson, J.
The Court concurs with the presiding Judge in the principles of his charge to the jury. The endorser of a promissory note undertakes to pay the amount, if the maker shall not have paid it, after demand made on the day fixed for payment, or by the last day of *grace, and provided due notice of his failure so to pay be given to the endorser. (N. &. McCord, 83; 2 N. & McC. 283.) But, it is clear that the endorser may waive his right to such timely demand and notice ; but when such a waiver of the endorser’s legal rights is alleged, it should be plainly proved ; and, assuredly, any endorser may expressly endorse his consent to waive such rights, and dispense with farther proof. As to the competency of any other person to fill up such special endorsement, by the authority of the endorsor, I can perceive no reason to question it, (3 Kent, 90; 6 Con. Rep. 340; 4 Pick. 386; 13 *186 John. 179; 17 Johns. 329.) And I know of no principle of law to prevent such authority being by parol or verbal direction. Blank endorsements are in general filled up by the endorsees, and such special endorsement is no more than an express waiving of the right to require due demand, and the notice of a failure to pay the note, which are facts usually proved viva voce. But whatever be the special endorsement, unless written by the endorser, its truth and correctness must be proved to have come from his authority, or it cannot avail the endorsee. It would be still a question upon the actual agreement or undertaking of the endorser, to be made out by evidence “aliunde.”
See Sup. 76; 3 Rich. 133; 4 Strob. 10. An.
To make out such an undertaking was in fact the very object in the case before the Court, in order to hold the endorser liable upon the alleged special endorsement supposed to have been authorized by Fleming.
The true question of the case, therefore, turns upon the inquiry : did Fleming authorize the special endorsement found upon Lockhart’s note ? The allegation that Fleming authorized such an endorsement, varying from, if not contradicting the usual purport of endorsements, and rendering him liable, when he would not have been liable, upon the usual blank endorsement, ought to be clearly made out. But the Court can perceive, in the evidence offered, no sufficient proof of any agreement to deprive Fleming of the established rights of an endorser. He may have well authorized the endorsee to fill out the endorsement, or considered himself as the security for the note, without agreeing to renounce the rights of an endorser who is a provisional security, (See Miller & Co. vs. Thompson, MS. cited 1 Rice’s Dig. 129.)
*Any one may renounce his legal rights. But it should ap-pear that he understood what he released, or else did so expressly. (1 Bailey, 453.) As, for instance, where the endorser promises payment, knowing there has been no demand upon the maker, and that he might have objected on that account. Atwood vs. Haseldon, (2 Bailey, 457.) Miller & Co. vs. Thompson, (1 Rice’s Dig. 129.)
In such a case, the subject of the release is of a legal advantage ; which may be done. But, in the case before the Court, there is scarcely any proof of such an intention. The evidence would rather go to excuse the endorsee for so filling up the endorsement, than to prove that he had express authority for doing it; and no support can be derived from his own act, or manner of endorsing the note. For, as against Fleming, we are to look not so much to the endorsement itself, as for the proof of his authority to Fowler to make such special endorsement ; and if we suppose the endorsement again in blank, we readily perceive how feeble is the evidence that Fleming ever intended to renounce his right to require a demand and notice of refusal to pay the note. There must, therefore, be a new trial, unless the plaintiff shall release the verdict to the extent of the note of $400 and interest.
The whole Court concurred.